IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>vs.<br>DENNIS R. SMITH, III<br>Defendant | CASE NO.<br>1:06-CR-00369-CCC-01 |

# TRANSCRIPT OF GUILTY PLEA HEARING
BEFORE THE HONORABLE CHRISTOPHER C. CONNER
UNITED STATES DISTRICT JUDGE
29 NOVEMBER 2006 - 2:00 P.M.

APPEARANCES:

**For the Government**:

Bruce D. Brandler, Esq., AUSA
U.S. Attorney's Office
Federal Building, 2nd Floor
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482

**For the Defendant**:

Matthew R. Gover, Esq.
Nealon & Gover
2411 North Front Street
Harrisburg, PA 17110
(717) 232-9900

**Court Reporter**:

Wesley J. Armstrong, RMR
Official Court Reporter
U.S. Courthouse & Federal Building
228 Walnut Street
Harrisburg, PA 17101
(717) 542-5569

Proceedings recorded by machine shorthand; transcript produced by computer aided transcription.

P R O C E E D I N G S

THE COURT: Good afternoon. Please be seated. Counsel and the Defendant can approach.

MR. BRANDLER: Good afternoon, Your Honor.

THE COURT: Good afternoon, Mr. Brandler.

MR. BRANDLER: This is the case of United States of America versus Dennis R. Smith, III, criminal number 1:06-CR-00369. The United States filed a criminal information on October 7th of 2006 charging Mr. Smith with a violation of Title 18, United States Code, Section 666.

A plea agreement was also filed wherein it's indicated that Mr. Smith would like to waive indictment by a grand jury and plead guilty pursuant to the terms of a plea agreement and the entry of that guilty plea. The United States is ready to proceed.

THE COURT: Good afternoon, Mr. Gover.

MR. GOVER: Good afternoon, Your Honor.

THE COURT: Good afternoon, Mr. Smith. Before I can accept your plea of guilty with respect to the charges that have been brought against you at docket number 6-369, it's necessary for me to establish for the record that you fully and completely understand your rights under the law, as well as the consequences of a guilty plea.

You will be placed under oath by the courtroom deputy and I will ask certain questions of you. You should be advised

that if you give me any false answers, you could be subject to further prosection for perjury or making a false statement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If at any time you would like to take a break and speak with Mr. Gover, your attorney, please interrupt me. I'm happy to accommodate that request. And finally, the last instruction I want to give you before we proceed is that if you don't hear one of my questions or you don't understand one of my questions, please let me know. I'm happy to repeat or rephrase my question.

So I will operate with the understanding that if you respond to one of the questions that I have posed to you, that is an indication then that you have both heard and understood the question. Do you understand that instruction?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Ms. McKinney, would you administer the oath?

(The Defendant was sworn by the Courtroom Deputy.)

COURTROOM DEPUTY: Please state your full name for the record.

THE DEFENDANT: Dennis R. Smith, III.

EXAMINATION BY THE COURT:

**Q.** Mr. Smith, can you read, write, and converse in English?
**A.** Yes, sir.

**Q.** And how old are you?
**A.** Forty-five, sir.
**Q.** Can you give us your educational background?
**A.** I have about two and a half years of college, certificate of data processing.
**Q.** And have you been treated for drug or alcohol addiction or mental illness?
**A.** No, sir.
**Q.** Have you had any drugs or alcohol today?
**A.** No, sir.
**Q.** Are you currently taking any prescription medicine?
**A.** No, sir.
**Q.** Under the circumstances are you feeling all right today?
**A.** Yes, sir.
**Q.** And do you understand the nature of today's proceeding?
**A.** Yes, sir.
**Q.** Mr. Smith, you're represented in this case by Matthew Gover, who is well known to the Court, having appeared here on many prior occasions. So far are you satisfied with the representation that you have received from your attorney?
**A.** Yes, sir.
**Q.** Have you been furnished with a copy of the charges that have been filed against you?
**A.** Yes, sir.
**Q.** Do you understand these charges, Mr. Smith?

**A.** Yes, sir.
**Q.** Have you had enough time to review these charges with your attorney?
**A.** Yes, sir.
**Q.** Has your attorney not only gone over these charges with you, but has he fully explained your rights and the defenses that you could bring to these charges?
**A.** Yes, sir.
**Q.** You have a constitutional right to be charged by indictment of a grand jury, but you can waive that right and consent to being charged by way of information of the United States Attorney's office. Specifically, you have the right to have had these charges submitted to a grand jury of sixteen to twenty-three people, and at least twelve of these people would have had to find probable cause that you committed the offense in order for you to be charged in an indictment.
Mr. Smith, do you voluntarily give up your constitutional right, this constitutional right to be charged by indictment of a grand jury, and agree to let the Government bring charges against you in an information?
**A.** Yes, sir.
**Q.** You're also entitled to a jury trial, Mr. Smith, in which you, through Mr. Gover, would select a jury consisting of twelve persons. At the trial the Government would have the responsibility of proving each and every element of the crime

charged against you, and you are presumed innocent until that burden is met.

At the trial you would have the right, through Mr. Gover, to cross examine witnesses that the Government would present. You in turn would have the right to subpoena witnesses and evidence on your own behalf, although you are not required to do so, and should you decide not to testify or put on any evidence, that decision cannot be used against you.

Any finding of guilt would have to be unanimous. That is, all twelve jurors would have to agree. If you give up your right to a jury trial, you give up your right to present any defenses that you may have, as well as the right to appeal any pretrial motions. Based on that description do you understand your constitutional right to a jury trial?

**A.** Yes, sir.

**Q.** And do you understand that you have a right to plead not guilty at this time and to proceed with a jury trial in this case?

**A.** Yes, sir.

**Q.** Is it your desire to give up your right to a jury trial and to enter a plea of guilty to the information?

**A.** Yes, sir.

**Q.** There is a plea agreement in this matter that I'd like to have placed in front of the Defendant. Mr. Smith, is that your signature on the last page of the written plea agreement?

**A.** Yes, sir.
**Q.** And before you signed this document did your lawyer fully explain the terms and conditions of the plea agreement to you?
**A.** Yes, sir.
**Q.** Did you sign this document voluntarily?
**A.** Yes, sir.
**Q.** And do you feel as though you have had enough time to speak with your lawyer about the terms and conditions of the plea agreement before you made a decision to sign it?
**A.** Yes, sir.

THE COURT: Mr. Brandler, would you place on the record a brief summary of the essential terms of the written plea agreement?

MR. BRANDLER: Yes, Your Honor. The highlights of the plea agreement are as follows. Both parties understand that the United Sentencing Commission advisory guidelines will apply to the offense for which the Defendant is pleading guilty. He understands that he has agreed to waive indictment by the grand jury and plead guilty to the felony information which is currently before the Court.

He understands that the information charges him with a violation of Title 18, United States Code, Section 666(a)(2), bribery concerning or receiving federal funds. Specifically he understands the charge related to a $32,500 payment made by him in exchange for a $250,000 DCED grant which was made to USTAAD

Systems.

He understands that the maximum penalty for that is imprisonment of ten years, a fine of up to $250,000, and a maximum term of supervised release of up to three years, to be determined by the Court, which will be served at the conclusion of and in addition to any term of imprisonment, the costs of prosecution, denial of certain federal benefits, as well as an assessment in the amount of $100.

In exchange for the Defendant's guilty plea the United States Attorney's Office has agreed that it will not bring any other criminal charges against him directly arising out of his involvement in the offense described in the information. However, nothing in the agreement limits prosecution for criminal actions charged, if any, arising out of that offense.

Furthermore, the United States has agreed that it will recommend that the Court reduce his offense level by three levels based on his acceptance of responsibility and by fully notifying authorities of his intention to enter a plea of guilty to avoid preparing for trial.

At the time of sentencing the United States may make a recommendation that it considers appropriate based upon the nature and circumstances of the case, up to and including the maximum sentence which I previously described. The Defendant has also agreed to continue to assist the United states in its

ongoing investigation of this matter. If the United states believes that the Defendant has provided substantial assistance pursuant to the guidelines, we may request the Court to depart below any applicable mandatory minimum range or guideline range for the Defendant.

The Defendant understands that the United States may decline to exercise its discretion in this respect and that it is only a recommendation and that the Court has the ultimate authority whether or not to grant the recommendation.

Finally, Your Honor, the plea agreement makes clear that the Defendant understands that the Court is not a party to the plea agreement nor any recommendations made by the parties, and that the Court is free to impose any sentence up to and including the maximum sentence. I believe those are the highlights.

THE COURT: Thank you, Mr. Brandler. Mr. Gover, is that an accurate summary of the terms of the plea agreement?

MR. GOVER: Yes, sir.

BY THE COURT:

**Q.** Mr. Smith, do you agree that was an accurate summary of the terms of the plea agreement?

**A.** Yes, sir.

**Q.** Other than these terms did anyone promise or offer you anything else to get you to plead guilty?

MR. GOVER: Court's indulgence?

THE COURT: Certainly.

(Brief pause.)

THE DEFENDANT: Could you repeat the question?

BY THE COURT:

**Q.** Yes. Other than those terms did anyone offer or promise you anything else to get you to plead guilty?

**A.** No, sir.

**Q.** Have there been any threats to you or any member of your family that caused you or forced you to sign the plea agreement?

**A.** No, sir.

**Q.** Do you understand that no one can guarantee you what sentence you will get from me?

**A.** Yes, sir.

**Q.** Do you understand that the terms of the plea agreement are simply recommendations to the Court, and that I can reject the recommendations without permitting you to withdraw your plea of guilty and impose a sentence which is more severe than you may anticipate?

**A.** Yes, sir.

**Q.** Do you understand that you are entering a plea to a felony and will be adjudged guilty of a felony, which may deprive you of valuable civil rights such as the right to vote, hold public office, serve on a jury, possess a firearm, or hold a professional license?

**A.** Yes, sir.
**Q.** Are you a United States citizen, Mr. Smith?
**A.** Yes, sir.
**Q.** I'm not doubting your response, but I'm required to inform you that if for any reason your citizenship is challenged, your guilty plea may result in the institution of deportation proceedings.
**A.** Yes, sir.
**Q.** Mr. Smith, do you understand that the statutory maximum term of imprisonment under the United states Code for this offense is ten years, a fine of $250,000, a maximum term of supervised release of up to three years, the costs of prosecution, denial of certain federal benefits, and a $100 assessment?
**A.** Yes, sir.
**Q.** Do you understand that the term of supervised release is served after the term of imprisonment?
**A.** Yes, sir.
**Q.** And do you understand that if you violate the terms of supervised release that you may be required to return to prison?
**A.** Yes, sir.
**Q.** Do you understand that there are sentencing guidelines that the Court must consider?
**A.** Yes, sir.

**Q.** And do you understand that the guidelines typically prescribe a sentencing range, and that range is advisory on the Court and that the guidelines do not provide for a departure from the prescribed range except under certain circumstances?
**A.** Can you say that again, sir? I didn't understand that.
**Q.** Do you understand that the guidelines that the Court will be considering are advisory on the Court and that the guidelines do not provide for a departure from a prescribed range except under certain circumstances?
**A.** Yes, sir.
**Q.** Have you and your attorney spoken about the sentencing guidelines that may apply to your case?
**A.** Yes, sir.
**Q.** Have you ever been on supervision for a crime before such as probation, parole, supervised release, or ARD?
**A.** No, sir.
**Q.** You should be advised that a prior conviction can affect your guidelines sentencing range, and if you were on supervision when you committed your present offense, your plea of guilty would be an admission that you violated that supervision. Do you understand that?
**A.** Yes, sir.
**Q.** A probation officer will prepare a presentence report which will set your guidelines sentencing range. If you disagree with the report, this guilty plea is still binding on

you, but you can contest the report with the officer, and after that before me, if necessary, and the Government may also file objections to the presentence report. Based on that description do you understand the procedure that we're going to follow?
**A.** Yes, sir.
**Q.** Do you understand that your attorney and the Government attorney can agree on facts and make recommendations and motions and requests at sentencing, but I do not have to do what they ask me to do?
**A.** Yes, sir.
**Q.** Nevertheless, this plea is binding on you, whether or not I agree with their facts and recommendations or grant their motions and requests. If your attorney or anyone else has estimated your guidelines at this time, and I determine after I review the presentence report that the guideline is different from what has been estimated to you, you cannot withdraw your guilty plea. Do you understand that?
**A.** Yes, sir.
**Q.** In no event can the guideline sentence exceed the maximum sentence permitted under the United States Code, which in your case is ten years. Do you understand that?
**A.** Yes, sir.
**Q.** Do you understand that as a consequence of your guilty plea that you may be required to submit a DNA sample?

**A.** Yes, sir.

**Q.** Do you understand that the guideline sentencing range is advisory only, and that after your guideline range has been determined the Court has the authority to impose a sentence which is more severe or less severe than the sentence called for by the guidelines?

**A.** Yes, sir.

**Q.** Do you understand that there is no more parole in the federal system and that you must serve the whole time of any imprisonment to which you are sentenced?

**A.** Yes, sir.

**Q.** Do you understand that you can appeal your sentence to a higher court, which could modify or set aside the sentence or order me to resentence you?

**A.** Yes, sir.

**Q.** The Government can also appeal your sentence. Mr. Smith, with all of the information that we have reviewed so far is it still your desire to plead guilty?

**A.** Yes, sir.

**Q.** And are you pleading guilty of your own free will because you are in fact guilty as charged?

**A.** Yes, sir.

**Q.** Do you have any questions of the Court regarding anything that we have covered so far this afternoon or anything else that appears in your plea agreement?

**A.** May I ask my attorney?
**Q.** You certainly may. Why don't you step back and ask him whatever you want.
(Brief pause.)
**Q.** Mr. Smith, do you have any questions --
**A.** No, sir.
**Q.** -- of the Court?
**A.** No, sir.
**Q.** Mr. Smith, in the information you are charged with the following: bribery concerning organizations receiving federal funds, in violation of Title 18 of the United States Code, Section 666(a)(2). At this time, Mr. Brandler, please place on the record a summary of the facts that the Government would present in support of these charges if this matter proceeded to trial?

MR. BRANDLER: Yes, Your Honor. Had the case proceeded to trial the United States would have proved the following facts for the record. In general the evidence would have shown that Mr. Smith agreed to give $32,500 to Thomas McGraw with the intent to influence and reward Mr. McGraw in connection with a $250,000 DCED opportunity grant which was awarded to Mr. Smith's business known as USTAAD.

Specifically the facts would show that Mr. McGraw was employed by the Pennsylvania Department of Community and Economic Development between May of 2000 and August of 2003.

The DCED was a state agency that received federal assistance in excess of $10,0000 during each one-year period between 2000 and 2004. Specifically the evidence would show that DCED received millions of dollars in federal funds from HUD's Community Development Block Grant program, among other federal programs.

Most of the time that Mr. McGraw worked at DCED he was part of the Governor's Action Team and held the title of Manager of Technology Initiatives. In that role he was responsible for identifying IT information technology companies that might be encouraged to relocate to Pennsylvania or expand ongoing actions in Pennsylvania through offers of DCED financial assistance.

One type of financial assistance DCED offered were opportunity grants that did not have to be repaid if certain conditions were met at the end of its specified term, generally involving creating a number of jobs and maintaining a presence in Pennsylvania.

Mr. McGraw was responsible for meeting with business officials and analyzing whether financial assistance packages would be appropriate. If he felt it was appropriate, he would put together a financial package and recommend to his superiors in the DCED to offer assistance to the company.

As a manager for the Governor's Action Team Mr. McGraw's recommendations were generally followed. Once approved, Mr. McGraw would draft a letter outlining the

assistance DCED was prepared to offer, and the letter would be signed by the Secretary of DCED and mailed to the business. The business would then accept the offer and execute a formal grant agreement.

The evidence would further show that in the summer of 2001 an individual by the name of Michael Butler introduced Mr. McGraw to Dennis Smith, who at the time was president of USTAAD, an IT company then located in Harrisburg, Pennsylvania, which is within the Middle District of Pennsylvania.

Mr. Butler and Mr. Smith were partners in another business called TriTech and its parent company TechSTN, which operated in Maryland. Mr. Smith was aware that Mr. McGraw worked for the Governor's Action Team and could obtain DCED grants, as Butler told him that Mr. McGraw had arranged for a grant for TriTech.

Misters McGraw and Smith began discussing an opportunity for a grant for USTAAD, and Mr. McGraw told Mr. Smith that he could get USTAAD a $200,000 grant, but wanted the same deal he had worked out with Mr. Butler, that he would get 10 percent of grant proceeds. Mr. Smith agreed to this arrangement.

Mr. McGraw recommended to his superior that USTAAD receive a $225,000 grant, which was approved. Mr. McGraw and Mr. Smith agreed to split the additional $25,000 fifty-fifty, making the payment owed to Mr. McGraw $32,500 for the grant.

Mr. McGraw then drafted the offer of assistance letter, which was mailed to Smith in August of 2001. The grant was awarded in December of 2001, and Mr. Smith received $225,000 from DCED in January of 2002.

Mr. McGraw did not want the payment to him to be traceable, so in October 2002 Mr. Smith wire transferred $32,500 from USTAAD's bank account to the law firm Mr. Butler had been previously associated with and that was currently handling the settlement of a home that Mr. McGraw was purchasing. The $32,500 was used in November of 2002 as part of the settlement on Mr. McGraw's home. I believe those are the highlights that the United States would prove, Your Honor.

THE COURT: Mr. Gover?

MR. GOVER: Your Honor, I just want to make sure we're all on the same page. It is my client's recollection that McGraw as a state official approached him and did indeed do what Mr. Butler said --

MR. BRANDLER: Brandler.

MR. GOVER: Excuse me, what Mr. Brandler said, and as a result of that discussion he said, "If you can get me the grant, I'll give you some money." They agreed on the amount of $32,000. The grant was provided to my client, and my client is the one that the grant was provided rewarding Mr. McGraw to the tune of $32,500. That is how my client understands his culpability. The only reason I raise that issue is in the

beginning of Mr. Brandler's explanation he talks about influence and reward. The statute reads in the disjunctive and it clearly refers to McGraw knowing he could get the grant done. Influence wasn't the intent here. It was just to take care of him after he got it done. I raised that, I don't know if Mr. Brandler has a problem with that, but --

MR. BRANDLER: As a factual scenario it is correct, and I think that corresponds to what he said, that Mr. McGraw approached Mr. Smith, told him that he could get him this grant, and if he wanted to be paid in exchange for the grant, Mr. Smith agreed to pay him in exchange for the grant. The grant was thereafter awarded to Mr. Smith's company and $32,500 went to Mr. McGraw from Mr. Smith's company. So I think that's all correct.

BY THE COURT:

**Q.** Mr. Smith, do you fully admit to those facts as clarified by your attorney and Mr. Brandler?

**A.** Yes, sir.

**Q.** All right. I am satisfied that that addresses all of the elements of the offense charged in the information. Mr. Smith, based upon all of the information that I have provided to you today, including, but not limited to, your rights to a trial by a jury of your peers, do you now wish to enter a plea of guilty to the information?

**A.** Yes, sir.

THE COURT: The Court makes the following finding, that the Defendant is fully alert, competent, and capable of entering an informed plea, and that this plea is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the elements of the offense pled to.

The Defendant's plea of guilty is there accepted, and he is now adjudged guilty of the offense. This case will be listed for sentencing on or before March 9, 2007, and the presentence report disclosure date is on or before January 23, 2007. Mr. Gover?

MR. GOVER: As a housekeeping matter, Your Honor?

THE COURT: Certainly.

MR. GOVER: With the two codefendants, issues that apply to all three as a result of how the presentence is prepared, I'd just want to put this out to you because I know they were heard before we were last week, based on my request, but I think it's very important that all three parties be in the room at the same time in the event there are issues. I don't know how Mr. Brandler feels.

MR. BRANDLER: No objection to having a joint hearing if there's going to be objections to the presentence report. If there's a hearing, I don't have a problem with being together with all the defendants, if there are mutual issues that need to be resolved.

THE COURT: I hate to anticipate a problem when one

does not yet exist. Why don't we wait and see whether there is an issue that is across the board --

MR. GOVER: Okay.

THE COURT: -- in all of the cases? Right now I'm not sure that this would be an option that we'll address, that would need to be addressed in all three cases, but if there is such a need, then I'm willing to have some sort of consolidated proceeding giving each and every defendant their right to present whatever they may want to in support of their objections.

MR. GOVER: Yes, Your Honor.

THE COURT: But let's cross that bridge when we come to it, okay? And, for the record, USTAAD is spelled U-S-T-A-A-D in all capital letters, is that correct.

MR. BRANDLER: That's correct.

(Brief pause.)

THE COURT: Anything further at this time?

MR. BRANDLER: Well, the bail issue, this is his initial appearance.

THE COURT: Oh, thank you. Because this is the Defendant's initial appearance we also have the issue of bail versus detention. I have received a pretrial services report. Mr. Brandler, do you have any objection to a release on recognizance --

MR. BRANDLER: No, your Honor.

THE COURT: -- without pretrial supervision?

MR. BRANDLER: No, I have no objection.

THE COURT: All right. The Court has reviewed the pretrial services report prepared by Mr. Buckwalter. It does not appear, and the Court so finds, that there are no factors suggesting that the Defendant poses a risk of nonappearance or a danger to the community, and therefore he is released on his own recognizance without pretrial supervision. Anything else?

MR. BRANDLER: No, Your Honor.

MR. GOVER: No, Your Honor, thank you.

THE COURT: Thank you very much. Good afternoon.

(Hearing concluded at 2:29 p.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**USA vs. Dennis R. Smith, III**

**1:06-CR-00369-CCC-01**

**Guilty Plea Hearing**

**29 November 2006**

I, Wesley J. Armstrong, Federal Official Court Reporter (**retired**), in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 20th day of January 2025

**/s/ Wesley J. Armstrong**

______________________________

**Wesley J. Armstrong**

**Registered Merit Reporter (retired)**