# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **No. 1:06-cr-369** |
| | **:** | |
| **v.** | **:** | **(Judge Neary)** |
| | **:** | |
| **DENNIS R. SMITH III,** | **:** | |
| **Defendant** | **:** | **Electronically filed** |

## UNITED STATES' BRIEF IN OPPOSITION
## TO PETITION FOR CORAM NOBIS RELIEF

JOHN C. GURGANUS
Acting United States Attorney

Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
Sylvia H. Rambo U.S. Courthouse
1501 N. 6th Street, Box 202
Harrisburg, PA  17102
Tel:  (717) 221-4482
Fax:  (717) 221-4493
carlo.d.marchioli@usdoj.gov

May 29, 2025

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................. 1

QUESTION PRESENTED ........................................................... 3

ARGUMENT ........................................................................... 3

Smith is not eligible for coram nobis relief because he has
failed to show that sound reasons exist for failing to seek
relief earlier, that he had no remedy at the time he pleaded
guilty, and that he is actually innocent. ......................................... 3

CONCLUSION ........................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Bousley v. United States,*
    523 U.S. 614 (1998) ................................................................ 13

*Carlisle v. United States,*
    517 U.S. 416 (1996) .................................................................. 4

*Ragbir v. United States,*
    950 F.3d 54 (3d Cir. 2020) ............................................. 3, 4, 6

*Rehaif v. United States,*
    588 U.S. 225 (2019) .................................................................. 7

*Snyder v. United States,*
    603 U.S. 1 (2024) ......................................................... 1, 6, 11, 12

*United States v. Beldini,*
    443 F. App'x 709 (3d Cir. 2011) ............................................. 6

*United States v. De Castro,*
    49 F.4th 836 (3d Cir. 2022) ....................... 3, 4, 5, 7, 8, 13, 15

*United States v. Denedo,*
    556 U.S. 904 (2009) .................................................................. 3

*United States v. Macrina,*
    109 F.4th 1341 (11th Cir. 2024) ........................................... 12

*United States v. Sun-Diamond Growers of Cal.,*
    526 U.S. 398 (1999) ................................................................ 11

Defendant Dennis Smith III challenges his nearly 20-year-old bribery conviction through a petition for writ of coram nobis. For multiple reasons, Smith is not entitled to that extraordinary remedy. Smith's claim—that his conduct does not actually constitute a crime— could have been pursued long ago. Additionally, Smith's reliance on *Snyder v. United States*, 603 U.S. 1 (2024), is misplaced. In *Snyder*, the Supreme Court held that gratuities paid to state and local officials are not unlawful under 18 U.S.C. § 666, but Smith's payments to a state official were not gratuities. They were bribes. They were criminal when Smith pleaded guilty in 2006, and they remain criminal today. The Court should deny Smith's petition

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Smith was the President and CEO of USTAAD Systems, a Harrisburg-based information technology company. PSR ¶ 13. In the summer of 2001, Smith was introduced to Thomas McGraw, an employee in the Pennsylvania Department of Community and Economic Development (DCED). PSR ¶¶ 4, 13. Smith and McGraw discussed the possibility of USTAAD receiving one of DCED's grants. PSR ¶ 13. McGraw told Smith that McGraw could obtain a $200,000 grant for

1

USTAAD, but that McGraw wanted ten percent ($20,000) in return for his services in obtaining the grant. *Id.* Smith agreed. *Id.*

McGraw then facilitated the approval of a $225,000 grant to USTAAD. PSR ¶ 14. After that approval, but before the offer letter was sent to USTAAD, McGraw asked Smith whether Smith would be willing to pay him fifty percent of any additional grant money above the $200,000. *Id.* Smith again agreed. *Id.*

USTAAD received the $225,000 in January 2022. PSR ¶ 16. Consistent with the two agreements, in September 2002, Smith wired $32,500 in a manner that would conceal the connection to McGraw. *Id.* The money was used to pay off one of McGraw's mortgages. *Id.*

This conduct came to law enforcement's attention in 2004. PSR ¶ 23. Smith ultimately pleaded guilty in 2006 to a criminal information charging him with bribery concerning organizations receiving federal funds, in violation of 18 U.S.C. § 666(a)(2). Doc. 1; Doc. 3. In 2007, the Honorable Christopher C. Conner sentenced Smith to one year of probation and imposed a $20,000 fine. Doc. 23.

In May 2025, Smith filed a petition for coram nobis relief along with a supporting brief. Doc. 31; Doc. 32. He contends, relying on

*Snyder*, that his conduct is not a crime.  Doc. 31, at 2.  Smith further maintains that he continues to suffer collateral consequences from his conviction and therefore seeks to have the conviction vacated.  Doc. 31, at 3, 19.

## QUESTION PRESENTED

Whether Smith has failed to satisfy the requirements for the extraordinary remedy of coram nobis relief.

## ARGUMENT

**Smith is not eligible for coram nobis relief because he has failed to show that sound reasons exist for failing to seek relief earlier, that he had no remedy at the time he pleaded guilty, and that he is actually innocent.**

"A writ of error coram nobis is an 'extraordinary remedy' that may only be issued in the most limited of circumstances."  *United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022) (quoting *United States v. Denedo*, 556 U.S. 904, 911 (2009)).  "The standard for obtaining coram nobis is more stringent than that applicable on direct appeal or in habeas corpus in recognition of judicial interests in finality and efficiency."  *Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020) (cleaned up).  The Supreme Court has accordingly explained that "it is

difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary and appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (cleaned up). "[I]t is presumed that the prior proceedings were properly conducted," and "[t]he petitioner has the burden to show otherwise." *Id.*

The Third Circuit has synthesized the availability of coram nobis relief into a five-part test, which reflects the incredibly limited nature of the remedy: "the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial [or guilty plea]; and (5) asserted error(s) of a fundamental kind." *Ragbir*, 950 F.3d at 62. "[A] petition must be denied if even one element is not satisfied." *De Castro*, 49 F.4th at 842.

Here, Smith is no longer in custody, and the Government assumes for present purposes that he continues to suffer consequences from his conviction. But Smith has failed to satisfy the remaining three requirements for coram nobis relief.

Smith has not established a sound reason for failing to seek relief earlier. The "sound reason" standard, although "permit[ting] some flexibility," is not "easy to meet." *De Castro*, 49 F.4th at 843. The standard "is even stricter than that used to evaluate § 2255 [motions]." *Id.* (quotation marks omitted).

Smith asserts that he "promptly filed this motion following *Snyder*, and the change in law . . . conclusively establishing that § 666 does not criminalize gratuities provides a sound reason for not seeking to vacate the conviction sooner." Doc. 32, at 13. The Government does not dispute that the passage of 10-plus months between *Snyder* and the filing of Smith's petition is unremarkable. That time alone does not preclude coram nobis relief. *See De Castro*, 49 F.4th at 844. But Smith wrongly assumes that the legal development occasioned by *Snyder* satisfies the sound-reason standard and justifies his 19-year delay in pressing his current claim.

That *Snyder* was decided 18 years after Smith pleaded guilty does not provide a sound reason for Smith's failure to seek relief during that time. In short, the claim—that § 666 does not cover gratuities and requires a quid pro quo—was available to Smith prior to *Snyder*.

*Snyder* did not overturn uniform authority across the courts of appeals. As the Supreme Court recognized, prior to *Snyder*, a circuit split existed as to whether § 666 criminalizes gratuities as well as bribes, with at least two circuits holding that gratuities are not covered. *Snyder*, 603 U.S. at 11. The question, moreover, appears to have been an open one in the Third Circuit prior to *Snyder* and certainly at the time of Smith's guilty plea in 2006. In a 2011 not-precedential opinion, the Third Circuit noted that "[t]here is an earnest circuit split on whether § 666 does or does not require proof of a quid pro quo" and that "[t]here is no Supreme Court or Third Circuit precedent on the point." *United States v. Beldini*, 443 F. App'x 709, 717 (3d Cir. 2011) (not precedential). Thus, Smith's current claim was available pre-*Snyder* (as it was for Beldini), and he offers no reason to justify his failure to pursue it sooner. *See Ragbir*, 950 F.3d at 65 ("[W]e have rejected the notion that ambiguity in the law justifies a delay in filing a coram nobis petition. What matters is whether a claim can be reasonably raised.") (cleaned up).

Contrary to Smith's assertion, *De Castro* does not support his argument. Doc. 32, at 13. That decision in fact compels the denial of

Smith's petition. In *De Castro*, the Third Circuit addressed a coram nobis petition based on *Rehaif v. United States*, 588 U.S. 225 (2019), in which the Supreme Court "held that under [18 U.S.C.] § 922(g), an illegal alien in possession of a firearm must be found to have had knowledge he was an illegal alien at the time of his arrest." *De Castro*, 49 F.4th at 840. In addressing the two years that passed between De Castro's plea hearing and *Rehaif*, the court noted that "[b]efore *Rehaif*, every single Court of Appeals to address the question had held that § 922(g) did not require the government to prove the immigrant knew he was in the United States illegally at the time of his arrest." *Id.* at 845 (quotation marks omitted). The court therefore recognized that if the sound-reason element could be satisfied "where the argument would require the upending of unanimous lower court authority, we would struggle to find an example better than *Rehaif*." *Id.* The court nonetheless held that De Castro failed to satisfy that element, holding that "De Castro's reference to [a] 'wall of precedent' is no excuse for his failure to preserve a *Rehaif* argument." *Id.* at 846. Because Smith, as explained above, had no wall of precedent standing in his way, his assertion of a sound reason is even weaker than De Castro's. Smith's

7

failure to establish a sound reason for his delay requires the denial of his petition.

For the same reasons, Smith also has failed to show that he had no available remedy at the time of his guilty plea. *De Castro* again controls. The court explained, "Because we hold that De Castro's knowledge-of-immigration-status argument was not futile in 2017—the time of De Castro's plea deal—and he had no sound reason for delay in raising the issue—like others such as Rehaif—we also hold there was a remedy available to De Castro at that time." *De Castro*, 49 F.4th at 846. Smith offers no reason for a different conclusion in this case. Smith's petition should be denied on this basis as well.

Even if Smith had established a sound reason for delay and that a remedy was not available when he pleaded guilty, his petition should be denied because he has not shown a fundamental error. To establish a fundamental error warranting coram nobis relief, a defendant who did not previously raise the claim, must show "either cause and prejudice or actual innocence." *De Castro*, 49 F.4th at 847 (quotation marks omitted). Smith does not appear to assert cause and prejudice, and indeed, he would be unable to establish cause for the reasons explained

above—that is, "[c]ause does not exist just because an argument seemed futile to the petitioner at the time of trial or guilty plea." *Id.* Smith instead argues that, in light of *Snyder*, he is actually innocent because he paid a gratuity, not a bribe. Doc. 32, at 13-16. That argument is meritless.

As recounted in Smith's presentence investigation report:

- McGraw (an official with the Pennsylvania Department of Community and Economic Development (DCED)) told Smith that McGraw could obtain a $200,000 grant for Smith's information-technology company USTAAD Systems, but that McGraw wanted to get ten percent of the grant amount in return for his services in obtaining the grant. PSR ¶¶ 4, 13.

- Smith agreed to this arrangement. PSR ¶ 13.

- After that agreement, McGraw recommended to another state official that USTAAD receive a $225,000 grant, and the grant was approved. PSR ¶ 14.

- After the grant approval but before the grant was offered to USTAAD, McGraw asked Smith whether Smith would be willing to pay him fifty percent of any additional money

above the $200,000 that McGraw was able to obtain, and Smith again agreed.  PSR ¶ 14.

- In January 2002, USTAAD received the $225,000 grant. PSR ¶ 16.

- Consistent with the two agreements, in September 2002, Smith wired $32,500[1] in a manner that would conceal the connection to McGraw.  PSR ¶ 16.

- Smith introduced McGraw to an executive of another company and told that executive that USTAAD had obtained a grant through McGraw but that McGraw expected to be paid for his services.  PSR ¶ 18.

This conduct is criminal, and *Snyder* does not suggest otherwise. *Snyder* held that § 666 does not prohibit the payment or receipt of gratuities—"for example, gift cards, lunches, plaques, books, framed photos, or the like—that may be given as a token of appreciation after

---

[1] This total consisted of $20,000 (ten percent of $200,000) and $12,500 (fifty percent of $25,000).

the official act."[2]  *Snyder*, 603 U.S. at 5.  Snyder was the mayor of Portage, Indiana, at the time the city awarded two contracts to a local truck company.  *Id.* at 9.  After the contracts were awarded, the company paid Snyder $13,000.  *Id.*  Snyder was convicted under § 666 for accepting an illegal gratuity.  *Id.*  The Supreme Court held that § 666 did not prohibit Snyder's acceptance of the gratuity.  *Id.* at 10. The Court made clear, however, that § 666 covers bribes—that is, "payments made or agreed to *before* an official act in order to influence the official with respect to that future official act."  *Id.* at 5 (emphasis in original).  Stated another way, bribery requires a quid pro quo—"a specific intent to give or receive something of value *in exchange* for an official act."  *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original).  Critically, the timing of the payment does not distinguish a bribe from a gratuity.  Rather, the existence of an agreement before the official act is the critical fact.  As

---

[2] *Snyder* specifically involved § 666(a)(1)(B), which prohibits state and local officials from soliciting, accepting, or agreeing to accept anything of value for an official act.  *Snyder*'s holding applies equally to the provision at issue here, § 666(a)(2), which prohibits a person from offering or giving anything of value to state and local officials with the intent to influence or reward.  *See Snyder*, 603 U.S. at 16 n.5.

the Supreme Court explained, "a reward given after the act with no agreement beforehand" is a gratuity, but "a reward given after the act pursuant to an agreement beforehand" is a bribe. *Snyder*, 603 U.S. at 18; *see also id.* at 19 ("[T]he timing of the agreement is key, not the timing of the payment . . . .").

The undisputed facts of this case establish that Smith agreed to pay McGraw a bribe and in fact did pay him a bribe. *Before* McGraw facilitated the grant payment for USTAAD, Smith twice agreed to pay him for that official act, and after the grant was paid, Smith followed through on those upfront agreements. As Smith confirmed during the change of plea proceeding, he "agreed to pay [McGraw] *in exchange* for the grant," "[t]he grant was thereafter awarded to [Smith's] company[,] and $32,500 went to [McGraw] from [Smith's] company." Doc. 27, at 19 (emphasis added). This conduct is quintessential bribery. *See, e.g.*, *United States v. Macrina*, 109 F.4th 1341, 1351-52 (11th Cir. 2024) ("Macrina's proposed instruction wrongly asserted that a payment received after an official act is completed is always a gratuity and can never be a bribe. . . . [In *Snyder*,] the Court made clear that the key difference between a gratuity and a bribe is whether the official and the

12

payer agreed to a payment for the official act. . . . *Snyder* held that if an official agrees to accept payment for an official act and does not receive payment until after the act is complete, the payment is still considered a bribe.").

Smith does not engage with the preceding undisputed facts or attempt to explain how they establish he is actually innocent of bribery. He instead argues that "the Government conceded in its Sentencing Memorandum that 'the payments in this case were more analogous to gratuities, rather than bribes.'" Doc. 32, at 16 (quoting Doc. 19). This argument suffers from multiple flaws.

First, "actual innocence means factual innocence." *De Castro*, 49 F.4th at 848. Smith's reliance on the Government's sentencing memorandum does not address factual innocence. He instead appears to resort to something akin to judicial estoppel. But that type of alleged legal impediment has no bearing on actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."). To establish a fundamental error, Smith must explain how he is factually innocent of bribery. He has failed to do so.

13

Second, the isolated statement highlighted by Smith pertained to a Sentencing Guidelines issue and not whether the facts established that Smith committed bribery under § 666. The Government's sentencing memorandum noted that it did not object to the PSR's use of the gratuity guideline (USSG § 2C1.2) rather than the bribery guideline (USSG § 2C1.1) and that in the prosecutor's view, "it was an extremely close call as these kickback payments could reasonably be viewed as bribes or gratuities." Doc. 19, at 4. The prosecutor ultimately "opted to take a generous view of the facts and agree that the payments . . . were more analogous to gratuities, rather than bribes, which results in a tremendous benefit to the defendant" in the form of a lower guideline range. *Id.* at 5. The prosecutor did not assert that the payments did not constitute bribes under § 666. The prosecutor, given his view that the guideline issue was a close call, elected not to litigate that issue. That concession on a guideline issue does not render Smith actually innocent of bribery under § 666.

Finally, even accepting that this guideline concession is relevant to the actual-innocence inquiry, the prosecutor's comments cannot do the work that Smith proposes. As explained, under Supreme Court

precedent, Smith's payments clearly constitute bribes.  The prosecutor's concession on the guideline issue may have therefore been overly generous.  But the prosecutor affirmed that the payments "could reasonably be viewed as bribes."  Doc. 19, at 4.  And "[a]ctual innocence requires a petitioner to show that it was more likely than not that no reasonable juror would have convicted him."  *De Castro*, 49 F.4th at 848 (quotation marks omitted).  Thus, even if the prosecutor's comments were somehow binding for present purposes, they nonetheless support the proposition that a reasonable jury could find Smith guilty of bribery under § 666.

Because Smith's conduct constitutes bribery (and at a minimum, a reasonable jury could reach that conclusion), he has not established a fundamental error and is not entitled to coram nobis relief.

## CONCLUSION

The Court should deny Smith's petition for coram nobis relief.

May 29, 2025

Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
Sylvia H. Rambo U.S. Courthouse
1501 N. 6th Street, Box 202
Harrisburg, PA  17102
Tel:  (717) 221-4482
Fax:  (717) 221-4493
carlo.d.marchioli@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Local Rule 7.8(b)(2) because it contains 2,981 words.

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 29, 2025, I served the foregoing document by

electronic service on the following individuals:

Ronald L. Finck, Esquire
rlfinck@mette.com

Joseph G. Poluka, Esquire
poluka@blankrome.com

<u>/s/ Carlo D. Marchioli</u>
Carlo D. Marchioli
Assistant U.S. Attorney
